FILED
United States Court of Appeals
Tenth Circuit

December 5, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

PERVAIZ KAISER,

        Plaintiff-Appellant,

v.

COLORADO DEPARTMENT OF
CORRECTIONS,

        Defendant-Appellee.

No. 12-1128
(D.C. No. 1:10-CV-01837-RBJ-CBS)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **GORSUCH**, **ANDERSON**, and **EBEL**, Circuit Judges.

Pervaiz Kaiser wanted to become a parole officer. Already working as a

corrections officer, Mr. Kaiser saw the move as a chance for advancement. He put in

his application and, soon enough, he was picked to join the incoming class of parole

officer trainees.

---

[*]    After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

Then the trouble began. On the first day of training, Mr. Kaiser didn't return to his assignment after a midday doctor's appointment even though his supervisor, Melissa Gallardo, expected him. Over the next couple of days, Mr. Kaiser was allegedly late to morning briefings and was slow to return from breaks. He disappeared a few times without telling anyone. He was on his cell phone more often than Ms. Gallardo would have liked. And he may have made an inappropriate comment during the Executive Director's opening remarks to the class.

Tim Hand, Mr. Kaiser's appointing authority, was none too pleased with what Ms. Gallardo (and others) had to report. Especially in light of Mr. Kaiser's personnel file, which revealed a similar pattern of behavior during the year when Mr. Kaiser served as a corrections officer. Only a week into Mr. Kaiser's training, Mr. Hand dismissed Mr. Kaiser from the program.

Mr. Kaiser saw things differently. He thought the real reason for his discharge was discrimination, owing to the fact that he is a Muslim from Pakistan. Pursuing this theory, Mr. Kaiser brought suit in federal district court under Title VII. *See* 42 U.S.C. § 2000e-2(a)(1). Ultimately, however, the district court granted the Department of Corrections' motion for summary judgment. The court held that Mr. Kaiser had failed to produce any evidence that the Department's stated reason for the firing — his poor performance during parole officer training — was pretextual.

Now on appeal, Mr. Kaiser says the district court was too quick to dismiss his case. He says all he needed to do to show pretext at summary judgment was to

testify as to his version of events. And, according to Mr. Kaiser, he had permission to go home after his doctor's appointment, he wasn't late to any of the training sessions, and he never used his cell phone while at the training academy.

The difficulty is that none of Mr. Kaiser's evidence, however charitably viewed, calls into question Mr. Hand's good faith belief that he had a troublesome trainee on his hands. When it comes to showing pretext, the relevant inquiry is whether the evidence suggests an employer's stated neutral reasons for a dismissal are "so incoherent, weak, inconsistent or contradictory that a rational factfinder could conclude the reason[] [is] unworthy of belief." *Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006). The question we ask "is not whether the employer's proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." *Id.* (quotation marks omitted). "The reason for this rule is plain: our role is to prevent intentional discriminatory hiring practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments." *Id.* In this case, none of Mr. Kaiser's evidence offers any reason to doubt that Mr. Hand was dissatisfied with Mr. Kaiser's performance, or that he had heard from several sources Mr. Kaiser wasn't living up to expectations and wasn't taking the training program seriously. Maybe Mr. Hand received erroneous reports as Mr. Kaiser says, but there's no reason to doubt Mr. Hand did receive many poor reports on Mr. Kaiser's conduct or that he believed those reports in good faith.

Seeking to establish pretext in a different way, Mr. Kaiser reminds us of his contention that Ms. Gallardo uttered "so you are the guy" when she found out about his religion and national origin. This, Mr. Kaiser insists, is evidence that the real reason for his discharge was his religion and national origin. But Mr. Hand, not Ms. Gallardo, was the decision-maker in this case. We know that Mr. Hand learned from several sources about Mr. Kaiser's allegedly poor performance. Meanwhile, there is no evidence in this record that Mr. Hand knew of Mr. Kaiser's national origin and religion, let alone that he was influenced by those facts in any way. In these circumstances, there is, once again, no reason to doubt Mr. Hand in good faith believed the stated reasons for his discharge decision. *See Minshall v. McGraw Hill Broad. Co.*, 323 F.3d 1273, 1281 (10th Cir. 2003) ("isolated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions" (alteration omitted)).

Seeking still other grounds for pretext, Mr. Kaiser offers a number of arguments that boil down to a contention that Mr. Hand's decision just wasn't fair. Mr. Kaiser says that Mr. Hand should have given him more time, that Mr. Hand shouldn't have taken his record of infractions as a corrections officer into account, and that Mr. Hand never had any intention of letting Mr. Kaiser explain himself. But again none of these arguments suggests Mr. Hand's proffered reason for letting Mr. Kaiser go was pretextual. As we have explained, it is not our function under the federal discrimination laws to tell employers how best to go about their jobs, but to

ask whether the employer's proffered reasons for firing an employee were held in good faith or, instead, subterfuge for possible discrimination. *Young*, 468 F.3d at 1250. Maybe others would have gone about the job differently than Mr. Hand did. But he bore the responsibility of assembling a class of competent, responsible, and respectful trainees capable of serving Colorado as parole officers. None of Mr. Kaiser's arguments undermines Mr. Hand's claim that he sincerely believed Mr. Kaiser wasn't cut out for the job.

  The judgment of the district court is affirmed.

Entered for the Court


Neil M. Gorsuch
Circuit Judge
